UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA                                             PLAINTIFF

CRIMINAL ACTION NO. 5:09-CR-181-JMH

V.

BRYAN COFFMAN,
MEGAN COFFMAN,
VADIM TASTSKIN,
        aka VICTOR TSATSKIN, and
GARY MILBY                                                          DEFENDANTS


**DEFENDANT MEGAN COFFMAN'S MOTION
FOR JUDGMENT OF ACQUITTAL PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 29**
*Electronically filed*


Comes the Defendant, MEGAN COFFMAN, by counsel, and respectfully moves this Court to enter a judgment of acquittal pursuant to Fed.R.Crim.P. 29. In support of her motion, the Defendant states the following:

Ms. Coffman is charged under this indictment with various counts of money laundering. According to Fed.R.Crim.P. 29, "the court … must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."[1]When considering a defendant's motion for judgment of acquittal, the court

---

[1]Fed.R.Crim.P, 29 titled, "Motion for Judgment of Acquittal," states:
  (a)  Before submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact "could have found the essential elements of the crime beyond a reasonable doubt."[2]  Even viewing the evidence in the light most favorable to the government, proof in this case is insufficient to convince any rational trier of fact that the essential elements of the crimes charged here have been proved beyond a reasonable doubt.

## THE GOVERNMENT HAS NOT PRODUCED EVIDENCE SUFFICIENT TO SUSTAIN A CONVICTION AGAINST MS.  COFFMAN FOR ANY OF THE CRIMES ALLEGED UNDER THE INDICTMENT

The indictment alleges that Ms. Coffman engaged in a conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h).  Further, the government alleges that Ms. Coffman engaged in financial transactions designed to conceal, disguise or hide proceeds from unlawful activity, also in violation of 18 U.S.C. § 1956.  Specifically, the government alleges that three separate financial transactions constitute the crimes charged:

(1) In December 2007, Ms. Coffman's husband (and co-defendant) Bryan Coffman removed his name from a brokerage account held jointly by Bryan and Megan Coffman.  A new account was established in Megan Coffman's name only; and

---

(b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion, either before the jury returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves the decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

[2]*U.S. v. Pennyman*, 889 F.2d 104 (6th Cir. 1989).

> (2) Ms. Coffman and her husband financed Megan Coffman's sister's purchase
> of a condominium in Charleston, South Carolina; and
>
> (3) Ms. Coffman and her husband purchased a yacht for approximately one and
> one-half million dollars.

According to the government, these transactions involved the proceeds of unlawful activity and were intended to conceal the illegal nature of the proceeds. However, evidence presented by the government in this case is insufficient to sustain a conviction against Ms. Coffman on any of the crimes charged here.

## RAYMOND JAMES FINANCIAL SERVICES ACCOUNT
### (COUNT #21)

Count twenty-one (21) of the indictment in this case alleges that Ms. Coffman violated 18 U.S.C. § 1956(a)(1)(B)(i)[3] when she participated in the transfer of approximately $1.4 million from a Raymond James Financial Services account held jointly by Ms. Coffman and her husband, Bryan Coffman into a separate Raymond James Financial Services account in Ms. Coffman's name only. In order to sustain a conviction on this count, the government must prove that Ms. Coffman: (a) knew the funds transferred were proceeds of some unlawful activity; (b) had the intent to promote the

---

[3] 18 U.S.C. § 1965 states in relevant part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –

(B) knowing that the transaction is designed in whole or in part –

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; …

. . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

carrying on of the unlawful activity; and, that she (c) knew the transaction was designed to conceal or disguise the illegal nature of the proceeds.

Here, evidence presented by the government is insufficient to prove that Ms. Coffman knew the funds at issue were proceeds of unlawful activity, that she had the intent to promote the carrying on of unlawful activity (the allegedly fraudulent business dealings of her husband), or, perhaps most importantly, that making changes to the Raymond James Financial Services account was designed to conceal the nature, location, source, ownership or control of the proceeds of unlawful activity. Indeed, the only evidence presented by the government in this case supports the conclusion that the transaction was nothing but an undisguised and entirely straightforward financial transaction. To wit, the proof in this case has established that Ms. Coffman's husband is a knowledgeable business attorney who lawfully set up trusts, offshore businesses and bank accounts for his various clients. As an experienced and sophisticated lawyer and businessman, if Mr. Coffman truly wanted to conceal, disguise or hide the profits of some unlawful activity, he could have easily and more effectively done so by methods other than simply removing his name from a stock account. Mr. Coffman routinely used his business knowledge to assist his clients in removing assets out of the reach of the United States government. It defies logic to conclude that Mr. Coffman, to protect himself and his wife, would only remove his name from a joint account that identified them both by name, address and telephone number. Furthermore, the new account still clearly identified Megan Coffman by name, address and telephone number. The new account remained with the *same* brokerage company (Raymond James) at the *same* location in Lexington, Kentucky, handled by the *same* registered broker. Considering that Mr.

Coffman did not even have the account removed from the local office to a different city or state, the only conclusion is that the transaction wasstraightforward and easily traceable, *not* intended to conceal the proceeds of fraudulent activity.  Therefore, any proof presented by the government with respect to this charge is insufficient to sustain a conviction.

## YACHT PURCHASE
### (COUNTS #22-26)

The government alleges that Ms. Coffman violated 18 U.S.C. §§ 1956(a)(1)(A)(i)[4] and 1956(a)(1)(B)(i)[5] when she participated various financial transactions in July and August 2008 that ultimately funded the purchase of a yacht. Again, evidence presented by the government concerning these counts in the indictment suggest that Ms. Coffman's activities were completely transparent and undisguised, *not* designed to promote or conceal unlawful activity as the government alleges.  Nothing about the yacht purchase was secretive.  Evidence has established that Ms. Coffman wired a total of $900,000.00 to attorneys handling the sale of the boat (namely, Holland and Knight).  That money was wired in three separate payments: 1) $450,000.00; 2)

---

[4]18 U.S.C. § 1956(a)(1)(A)(i) provides in relevant part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –

(A)(i) with the intent to promote the carrying on of specified unlawful activity . . .

. . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

[5]*Ibid.*

$310,000.00; and 3) $140,000.00. Ms. Coffman obtained an additional $600,000.00 in financing for the boat through Bank of America via her company, Baniel, incorporated in Charleston, South Carolina. Ms. Coffman personally signed as the owner of Baniel for the loan. Additionally, Ms. Coffman personally opened a Baniel bank account at South Coast Bank in Charleston, South Carolina to pay for boat expenses, including the $600,000.00 mortgage payment. Again, Ms. Coffman opened that account personally with the use of her driver's license.

Finally, Ms. Coffman made no attempt to conceal her involvement in the purchase of the boat. She appeared personally at St. John's Yacht Marina to purchase the dock space for the boat. Most importantly, at the time the boat was purchased, the boat was registered and flagged in the British Virgin Islands. The Coffmans paid additional money to have the boat "reflagged" from the British Virgin Islands and brought into the United States. Since the boat was purchased out of Florida, the Coffmans were required to file documents with the state of Florida (which Ms. Coffman did through her lawfully-registered company, Baniel), showing that the boat was being removed from Florida and docked in South Carolina. All of the necessary documentation was signed and filed accordingly. As there was clearly no effort to conceal this purchase, the government has not satisfied the "concealment" element of the offense and, therefore, this Court must grant Ms. Coffman's motion for judgment of acquittal.

## CONDOMINIUM PURCHASE
### (COUNTS #27-32)

Finally, the government alleges that Ms. Coffman's involvement in financing her sister, Corrie Anderson's purchase of a condominium in Charleston, South Carolina

constituted further violations of 18 U.S.C. §§ 1956(a)(1)(A)(i)[6] and 1956(a)(1)(B)(i).[7] Again, however, the only proof in this case supports the conclusion that Ms. Coffman's were entirely lawful and transparent.

Mr. and Ms. Coffman financed Corrie Anderson's purchase of a condominium through Ms. Coffman's limited liability company, Dacorta. Dacorta was a limited liability company incorporated by Megan Coffman in July 2003. Dacorta's incorporation date occurred well before any of the allegedly unlawful conduct in this case. Dacorta's business purpose was real estate investing and asset holding. The asset in this case was going to be a thirty (30) year promissory note (mortgage) executed by Corrie Anderson in favor of Dacorta.

The condominium purchase was a straight-up, arms-length transaction. The sale was handled by the Law Firm of Holly Jensen. Mr. Coffman wrote a *check* – creating an easily traceable paper trail – in the amount of $160,000.00 made payable to Megan Coffman. Mr. Coffman wrote "LN for Corrie" (i.e., loan for Corrie) in the memo of the check. If Mr. and Ms. Coffman had intended to hide anything from the government, they simply could have withdrawn cash from Mr. Coffman's account and given the money to Corrie directly. However, they did not do so. They used an easily traceable check, bearing a note in the memo section an honest description of the check's intended purpose. Ms. Coffman placed this check in her personal account at a bank in Lexington, KY located within fifteen (15) minutes of where she lived. She personally opened this, and all of her personal bank accounts, as well as her Dacorta accounts, with her personal information, including her name, address and telephone number.

---

[6] *Ibid.*
[7] *Ibid.*

7

Ms. Coffman wired $151,000.00 from Dacorta's account to the law firm handling the sale.  Again, if there had been any intent to conceal or hide the transaction, the Coffmans could have given cash or wired money to Corrie Anderson directly.  Instead, Dacorta wired the funds to the attorney handling the closing for the condominium. The funds remained in the attorney's escrow account until all the documents had been properly signed and filed.  Documents filed with the county clerk's office included a deed and mortgage.  The deed shows that Corrie Anderson was the owner of the condominium. The mortgage was in favor of Dacorta and required Corrie Anderson to pay the thirty (30) year note at six (6) percent interest.  Significantly, the mortgage required Ms. Anderson to pay approximately $905.00.  Her monthly payments, however, were $1,203.68.  The three hundred dollar difference was due to Dacorta escrowing Ms. Anderson's taxes and homeowner's association dues.  Notably, the first payment on the mortgage was due on April 1, 2008, before Mr. Coffman's interview at DFI.  Thus, this evidence demonstrates that this was not a gift, but a business transaction. The condominium purchase was transparent and easily traceable.

## CASE LAW SUPPORTS SUSTAINING MS. COFFMAN'S MOTION

A number of cases, from the United States Supreme Court, the Court of Appeals for the Sixth Circuit, as well as other circuits, support sustaining Ms. Coffman's motion for judgment of acquittal.  In *Cuellar v. United States*, the United States Supreme Court emphasized that the "intent to conceal" element is key to sustain a conviction for money laundering.[8]  In that case, the defendant/appellant, Cuellar, was charged with violating the federal money laundering statute (under § 1956(a)(2)(b)(i)) for transporting the proceeds

---

[8] *Cuellar v. U.S.*, 553 U.S. 550 (1994).

8

of drug trafficking from the United States to Mexico.  Cuellar was apprehended driving a car in which a hidden compartment had been created, ostensibly, to store and conceal large amounts cash.  Additionally, the compartment was covered in animal hair, presumably to cover the odor of marijuana.  The United States Supreme Court concluded that, while the method by which Cuellar transported the money were "probative of an underlying goal to prevent funds from being detected" while driving from the United States to Mexico, "merely hiding funds . . . is not sufficient to violate the statute, even if substantial elements efforts have been expended to conceal money."[9]The Court continued, "*how* one moves the money is distinct from *why* one moves the money.  Evidence of the former, standing alone, is not sufficient to prove the latter."[10]Because there was insufficient evidence that Cuellar's transportation of the money "was designed in whole or in part … to conceal or disguise the nature, the location, the source, the ownership, or control of the proceeds," his conviction was reversed.

In this case, Ms. Coffman's actions – legally obtaining and accepting money to facilitate legitimate financial transactions – can hardly be considered anywhere close to as suspicious as transporting cash in a hidden compartment covered in animal hair.  There was simply no effort to conceal her transactions at all.  However, even if this court believed there was an effort to conceal those transactions, the government still has not proven that the *purpose* of the concealment was "designed in whole or in part … to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds" at issue in this case.  Therefore, this Court must sustain Ms. Coffman's motion for judgment of acquittal.

---

[9]*Id.* at 562.
[10]*Id.* at 566.

In a case factually similar to the one here, the defendant/appellant Harriet Warshak received $1 million from her son, who was convicted of laundering.[11]  Also charged with money laundering, Ms. Warshak placed the money in an account in her name at USB Financial Services.  She then divided the money, putting $250,000 in an annuity account, $250,000 in a life insurance account, and $467,940 in an investment account in her name.  Ms. Warshak's money laundering and conspiracy convictions were vacated.  The Court of Appeals for the Sixth Circuit noted that "[i]n order to be convicted of concealment money laundering, [Ms. Warshak] must have had knowledge that the transactions were designed to conceal some aspect of the money at issue."[12] And, even though the government presented some evidence that Ms. Warshak knew the $1 million dollar gift was *proceeds* of fraud, evidence was insufficient to show that she knew the gift of was an attempt to *conceal* the money.

Again, here, even if the government has presented evidence that Ms. Coffman knew the money used in the transactions discussed above was proceeds from fraudulent activity on Mr. Coffman's part, there is no evidence to suggest that Ms. Coffman knew that the Raymond James account, the purchases of the yacht and condominium were designed to conceal the money.  Thus, this Court would be well justified in sustaining her motion for judgment of acquittal.

In *United States v. Marshall*, the defendant was charged with three counts of money laundering for purchasing a Rolex watch, a tennis bracelet, and an expensive wine.[13]  The Sixth Circuit Court of Appeals noted that if a defendant is readily identifiable to a sales person and does not use a third party to disguise her identity, there

---

[11]*U.S. v. Warshak*, 631 F.3d 266 (6th Cir. 2010).
[12]*Id.* at 323.
[13]*U.S. v. Marshall*, 248 F.3d 525 (6th Cir. 2001).

must be other evidence to support money laundering.  Although this case can be distinguished from the one here because the purchases in *Marshall* were relatively small, that Court nonetheless made a point that the government must produce more than the simple fact of a retail purchase using illegally obtained money. Though the purchases at issue in this case – stock, a yacht and real estate – are certainly larger by comparison to those in *Marshall*, the Court's analysis is nonetheless relevant, for, as in this case, and the defendant did not attempt to conceal her identity in making the purchases.  Therefore, this case also supports sustaining Ms. Coffman's motion for judgment of acquittal.  A number of cases from this and other circuits support this conclusion, as well.[14]

Because case law has established that, even if a defendant knew that proceeds were derived from fraudulent activity, that knowledge *alone* will not sustain a conviction under the federal money laundering statutes.  Without sufficient evidence to prove that Ms. Coffman knew that the transactions at issue were designed to conceal the illegal nature of the proceeds, this court must grant her motion for directed verdict of acquittal.

**WHEREFORE,** the defendant, Ms. Megan Coffman, respectfully requests this Court grant her motion for judgment of acquittal pursuant to Fed.R.Crim.P.29 on all charged counts in this indictment.

Respectfully submitted,

/s/ Patrick J. Renn
Counsel for Defendant
600 West Main Street, Suite 100
Louisville, KY 40202
(502) 540-5700
(502) 540-1200
prenn@600westmain.com

---

[14]*See U.S. v. McDougald*, 990 F.2d 259 (6th Cir. 1993).  *See also U.S. v. Hassan*, 578 F.3d 108 (2nd Cir. 2009); *U.S. v. Campbell*, 977 F.2d 854 (4th Cir. 1992); *U.S. v. Olaniyi-Oke*, 199 F.3d 767 (5th Cir. 1999).

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 6, 2011, I electronically filed with the Clerk of the Court by using the CM/ECF system, which will serve notice of electronic filing to all attorneys of record

                                   /s/ Patrick J. Renn_____